Cameron C. Artigue #011376
**GAMMAGE & BURNHAM P.L.C.**
40 NORTH CENTRAL AVENUE
20TH FLOOR
PHOENIX, AZ 85004
T: (602) 256-0566
F: (602) 256-4475
cartique@gblaw.com
docket@gblaw.com
*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gethsemani Baptist Church, an Arizona nonprofit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>City of San Luis, a political subdivision of the State of Arizona<br><br>Defendant. | No. 2:24-cv-00534-GMS<br><br>**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>(Oral Argument Requested) |

Defendant City of San Luis ("City") hereby moves to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). With respect to the Rule 12(b)(6) component of this motion, Defendant has separately filed the certificate required by LRCiv 12.1. The Rule 12(b)(1) component of this motion is supported by the attached Declaration of the City's Director of Development Services, Jose Guzman, attached as **Exhibit A**. This motion is supported by the following Memorandum.

12990.1.3833106.1

**MEMORANDUM**

This Memorandum first summarizes the nature of the dispute and the five claims pleaded in the Amended Complaint. It then explains, in sequence, why the Court should dismiss each of those five claims.

**I.     Preliminary Statement**

   **A.     The Church's Dispute with the City of San Luis**

Plaintiff Gethsemani Baptist Church (the "Church") owns residentially-zoned property in the City of San Luis, Arizona (the "City"). Amended Complaint (Doc. 34) ¶ 4. This litigation arises from the Church's operation of a "Food Ministry" in a residential area. The Amended Complaint challenges two aspects of the City's enforcement of the San Luis City Code.[1]

   **1.     The Church's Daily Operation of Semi-trucks**

No fewer than 40 times, the Amended Complaint discusses the Church's use of "semi-trucks," which is the principal source of friction between the City and the Church. *See*, *e.g*., Amended Complaint ¶¶ 1, 2, 32, 38, 45, 65, 89, 92. The Church property can only be accessed from residential streets—B Street and Babbitt Lane. The City's street classification system designates B Street and Babbitt Lane as "local streets," which is the category with the narrowest right-of-way and the lowest projected traffic volume. Guzman Dec. ¶ 7.

The Church loads and unloads its semi-trucks "almost every day." Amended Complaint ¶ 70.

---

[1] The City's unified code is cited as "SLCC." Although the City's Zoning Ordinance is codified as Title 18 of the City Code, it is cited as the San Luis Zoning Ordinance or "SLZO" to reflect the fact that it was adopted through the more-rigorous procedures that Arizona law requires for the adoption of zoning ordinances.

Paragraph 52 of the Amended Complaint challenges three provisions of the City Code:

- It is unlawful to "stand or park" any vehicle with a chassis over three-fourths of a ton (which includes a semi-truck) on a local street in a residential area "except during the process of loading or unloading the vehicle." SLCC § 10.15.250.[2]
- It is unlawful to "stop, stand, park or store" a trailer on any public street "for a period of more than two hours." SLCC § 10.15.255(D).
- It is unlawful for "any commercial vehicle" to park on a residential lot. SLCC § 10.15.255(A). A commercial vehicle is any vehicle that has "more than one-and-one-half tons' capacity," which includes semi-trucks. *Id.*

These provisions of law are part of Title 10 of the City Code ("Vehicles and Traffic"). They are not part of the City's Zoning Ordinance.

### 2. The Church's Lack of a Conditional Use Permit

The Amended Complaint also challenges the City's enforcement of its Zoning Ordinance. The City requires a Conditional Use Permit ("CUP") to operate a "religious institution" and/or a "commercial retail use." SLZO § 18.25.040(C); Guzman Dec. ¶ 9. The Church admits that it does not have the required CUP. Amended Complaint ¶¶ 67-69; Guzman Dec. ¶ 15.

A CUP is a common mechanism of land use regulation. Like many zoning ordinances, the City's Zoning Ordinance distinguishes between "permitted uses" and "conditional uses." Permitted uses are allowed as of right, meaning that no further review

---

[2] To "stand" a vehicle means to cease movement during loading and unloading. *Cf.* A.R.S. § 28-873(A) (generally unlawful to "stop, stand, or park" a vehicle); A.R.S. § 28-874(C) (making it a violation to "stop, stand, or park" a vehicle contrary to parking signs).

or approval is required. In the R1-6 zone, where the Church's property is located, permitted uses include single-family residences and similar uses (home occupations, home-based childcare, and assisted living facilities). SLZO § 18.25.040(B); Guzman Decl. ¶ 8. The Amended Complaint does not allege that the Church is a permitted use.

In contrast, conditional uses are allowed if, and only if, the owner first obtains a CUP.[3] *Id.* Conditional uses are designated as such because they tend to impact the surrounding neighborhood, particularly by generating vehicle traffic. Conditional uses often include places of public assembly. In the R1-6 zone, conditional uses include religious institutions, public schools, private schools, charter schools, libraries, museums, and "commercial retail" operations. SLZO §§ 18.25.040(C)(2), (3), (4), (6); Guzman Dec. ¶ 9.

An application for a CUP is reviewed by the City's planning staff, followed by public hearings at the City's Planning Commission and City Council. The City may attach "conditions in order to ensure the appropriateness of the use at a particular location within a given zoning district." SLZO § 18.15.040(A). The City has received and acted upon approximately six CUP applications in the past two years. Guzman Dec. ¶ 12. The decision to issue a CUP is discretionary. *See Redelsperger v. City of Avondale*, 207 Ariz. 430 (App. 2004) (discussing review and issuance of CUP).

Although the Church is free to apply for a CUP, it has never done so. Guzman Dec. ¶13. If the Church did so, its application would be reviewed and processed in the same manner as any other CUP application. Guzman Dec. ¶14.

---

[3] In Arizona and elsewhere, municipalities usually use the term "conditional use permit" to describe this type of discretionary approval. Sometimes other terms are used. *See Redelsperger*, 207 Ariz. at 434 ¶ 10 (stating that the terms "special use permit" and "conditional use permit" are "synonymous and often used interchangeably").

1      **B.     The Amended Complaint's Five Claims for Relief**

2      Count One alleges that Defendant is imposing a substantial burden on the Church's

3 activities under 42 U.S.C. § 2000cc(a)(1) of the Religious Land Use and Institutionalized

4 Persons Act (RLUIPA).  Amended Complaint ¶¶ 107-129. Count Two alleges, also under

5 RLUIPA, that Defendant is treating the Church on "less than equal terms" under 42 U.S.C.

6 § 2000cc(b)(1). *Id.* ¶¶ 130-137.

7      Count Three seeks relief under 42 U.S.C. § 1983, based upon the City's alleged

8 deprivation of the Church's rights under the Free Exercise Clause of the First Amendment.

9 *Id.* ¶¶ 138-158.

10     Counts Four and Five are state law claims for alleged violations of A.R.S. § 41-

11 1493.03.  Specifically, these counts allege that Defendant is imposing an "unreasonable

12 burden" on the Church under A.R.S. § 41-1493.03(A), and that Defendant is treating the

13 Church on "less than equal terms" under A.R.S. § 41-1493.03(B). *Id.* ¶¶ 159-174.

14     **C.     Two Merits Issues not Raised.**

15     Though not raised by this motion, two merits issues should be noted.

16     First, is the commercial nature of the Church's Food Ministry. While RLUIPA has

17 often been applied to protect ***giving*** free food to needy persons, RLUIPA does not protect

18 ***selling*** food.  RLUIPA's legislative history and case precedents confirm that RLUIPA does

19 not protect commercial activity.[4] The Amended Complaint admits that the Church accepts

---

[4] 146 Cong. Rec. S7774-01, S7776 (July 27, 2000) (Statement of Sens. Kennedy and Hatch) (explaining that RLUIPA does not protect activities merely because they "permit a religious institution to obtain additional funds to further its religious activities," and giving as an example that RLUIPA does not protect religious use of a "commercial building"). The case law recognizes that RLUIPA affords no protection for commercial activities. *Scottish Rite Cathedral Assn. of Los Angeles v. City of Los Angeles*, 156 Cal. App. 4th 108, 118 (2007) (RLUIPA does not protect commercial activity just because it raises revenue to support religious activity); *Greater Bible Way Temple of Jackson v. City of Jackson*, 733

"donations" in exchange for food. *Id*. ¶¶ 26, 72 (Church "request[ed] small donations" in exchange for food). If discovery and an evidentiary hearing become necessary, the facts will show that much of the Church's activity consists of retail sales under the guise of "suggested donations." Such activity does not qualify as charitable. *E.g.*, *Gardner v. Comm'r of Internal Revenue*, 845 F.3d 971 (9th Cir. 2017) (holding that "suggested donation" label did not change commercial transaction into charitable contribution).

Second, RLUIPA does not apply to the vehicle traffic laws challenged in the Amended Complaint. RLUIPA only affects "land use regulations" as that term is defined in 42 U.S.C. § 2000cc-5(5). Under the relevant parts of that definition, RLUIPA applies to the enforcement of "zoning" laws that regulate the use of "land" that the plaintiff "owns"—or, at a minimum, the regulation of "land" in which the plaintiff has a "property interest." *Id.* Traffic laws are not "zoning" laws, and the Church neither "owns" nor has a "property interest" in B Street and Babbitt Lane. *See* A.R.S. § 9-240(3) (municipalities have "exclusive control" over public streets).

Again, these issues are noted merely to prevent surprise. They need not be decided for purposes of this Motion.

## II. The RLUIPA Claims (Counts 1 and 2) Must be Dismissed.

The Court lacks jurisdiction over the RLUIPA claims because they are not ripe under governing Circuit precedent. In particular, a landowner must submit at least one

---

N.W.2d 734 (2007) (RLUIPA did not protect church's construction of residential housing); *California-Nevada Annual Conference of the Methodist Church v. City & Cnty. of San Francisco*, 74 F. Supp. 3d 1144 (N.D. Cal. 2014) (church's "commercial endeavors" are not protected, even if they are undertaken to fund a religious mission); *Rector Church Wardens v. City of Philadelphia Historical Comm'n*, 215 A.3d 1038, 1045 (Pa. Commw. Ct. 2019) (RLUIPA does not protect church's property sales "even if the profits will go toward furthering a religious mission").

application for a CUP before a RLUIPA claim is ripe. *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 976 fn. 14 (9th Cir. 2011). Moreover, a claimant must obtain a decision on a CUP to establish RLUIPA's jurisdictional element under 42 U.S.C. § 2000cc(a)(2).

### A. The RLUIPA Claims are not Ripe under *Guatay Christian Fellowship*

#### 1. The Church must submit "at least one" CUP application.

The Ninth Circuit's seminal RLUIPA case exemplified what a ripe claim looks like. *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978 (9th Cir. 2006). The local zoning jurisdiction reviewed, and ultimately denied, an application for a CUP to construct a religious temple. The City's decision supplied the "individualized assessment" that triggered the applicability of RLUIPA. *Id*. at 985-986. On the merits, the Ninth Circuit concluded that denial of the CUP violated RLUIPA. *Id*. at 991-992.

Following *Guru Nanak Sikh*, all Ninth Circuit RLUIPA land use cases have reached the merits *after* the landowner applied for a CUP. *See Elsinore Christian Ctr. v. City of Lake Elsinore*, 197 Fed. Appx. 718, 719 (9th Cir. 2006) ("the decision by the City to deny the Church's CUP means that the City violated RLUIPA"); *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059 (9th Cir. 2011) (holding that City violated RLUIPA by denying a CUP and related rezoning); *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163 (9th Cir. 2011) (noting that the plaintiff had applied for a CUP before church filed suit); *New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596 (9th Cir. 2022), cert. denied, 143 S. Ct. 567 (2023) (reviewing RLUIPA claim filed after city denied CUP application).

In contrast, the Ninth Circuit concluded that the district court lacked jurisdiction to consider a RLUIPA claim before the plaintiff applied for a CUP. *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d. The Court held that RLUIPA claims are subject to the ripeness (or "final decision") requirement established in *Williamson Cnty. Regional*

*Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172 (1985). Under the *Williamson County* rule, a RLUIPA claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Guatay Christian Fellowship*, 670 F.3d at 978 (citing *Williamson Cnty.*, 473 U.S. at 186). A claimant cannot premise a RLUIPA claim upon a city's issuance of cease-and-desist letters; a claim becomes ripe only after a municipality adjudicates an application for a CUP:

> A "final decision" as contemplated by *Williamson County* does not refer to a decision about whether the Church is *currently* violating land use regulations—as contained in the County's communications to the Church in April and May 2008. Rather, ***the final decision we need to proceed on the merits of these claims is one regarding whether the Church will or will not be granted a permit to use the property as it wishes moving forward—which can only result from a completed Use Permit application.*** In other words, we cannot even begin to determine that the County has definitively barred the Church from using the building as it wishes until it has had the opportunity to evaluate a completed application and has determined how it will apply its land use regulations to the Church. *Guatay Christian Fellowship*, 670 F.3d at 981 (first emphasis in original; second emphasis added).

The ripeness requirement offers numerous benefits. It necessarily focuses—and potentially obviates—potential litigation under RLUIPA. The CUP process requires all parties to evaluate, using objective criteria, whether the proposed use is compatible with the surrounding area, and what conditions might mitigate possible conflicts. *See* Guzman Dec. ¶10. Section 18.15.040(F) of the City's Zoning Ordinance specifies the relevant criteria, which parallel the criteria described as "objective" in *Redelsperger*, 207 Ariz. At 435. Guzman Dec. ¶ 11. The CUP process would also explore (through both staff review and public hearings) possible conditions that might be attached to a CUP. In short, the

application of CUP would produce a decision that was deliberate, objective, and final.

## 2. The Church's Allegation of Futility Fails.

The Church cannot dispute that Ninth Circuit authority requires it to submit a CUP application in order to ripen its claim. Instead, by way of excuse, the Amended Complaint alleges that it would be "futile" for the Church to apply for a CUP. *Id.* ¶ 95. This conclusory allegation does not magically erase the jurisdictional requirement. *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005) ("mere allegations" of futility are insufficient) (quoting *Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1501 (9th Cir.1990)); *Herrington v. Cnty. of Sonoma*, 857 F.2d 567 (9th Cir. 1988) ("mere allegations" of futility are not sufficient).

To the contrary, *Guatay* specifies that "a property owner cannot rely on the futility exception until he or she makes at least one meaningful application." *Guatay Christian Fellowship*, 670 F.3d at 982 (quoting *Herrington v. Cnty. of Sonoma*, 857 F.2d at 569). This statement of the ripeness (or "final decision") requirement flows from *Williamson County*, where the Supreme Court explained that the landowner could not obtain the "final decision" needed to ripen its claim until it had applied for zoning variances. *Id.* at 188.

In several 1980's decisions, the Ninth Circuit reconciled *Williamson County* with older Circuit precedent that discussed a potential "futility" exception. Since 1987, Circuit precedent applying *Williamson County* has required a claimant to submit "at least one" application before the Court can consider a claim of futility. *E.g.*, *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454 (9th Cir.), amended, 830 F.2d 968 (9th Cir. 1987) ("*at least one* application must be submitted before the futility exception applies.") (emphasis in original); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d at 1501 (same); *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227 (9th Cir. 1994) (same); *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d at 1035 (same). As noted, the Ninth Circuit quoted and adopted this rule with respect to RLUIPA claims in *Guatay*.

## B. RLUIPA Does not Even Apply Until the City Makes an "Individualized Determination" on an Application for a CUP

The Church's refusal to apply for a CUP requires dismissal for a second and independent reason, *i.e.*, it leaves unsatisfied RLUIPA's jurisdictional prerequisite. RLUIPA was preceded by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*, which was invalidated with respect to state laws in *City of Boerne v. Flores*, 521 U.S. 507 (1997). When Congress subsequently enacted RLUIPA, it required a plaintiff to prove a "jurisdictional" requirement as part of its claim. 42 U.S.C. § 2000cc(a)(2).[5]

Under 42 U.S.C. § 2000cc(a)(2), as explained in *Guru Nanak Sikh*, RLUIPA does not even apply unless and until the local jurisdiction makes an "individualized determination" with respect to the plaintiff's property. *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter,* 456 F.3d at 984. In essence, this requires the municipality to act upon the owner's application for a CUP or similar site-specific development application (*e.g.*, a zoning variance). The Ninth Circuit explained that "[b]efore we apply the terms of RLUIPA, of course, we first must determine if RLUIPA even applies, by examining whether the actions of the County are 'individualized assessments of the proposed uses for the property involved.'" *Id*. at 986. The Court held that a governmental entity makes an individualized assessment when it "take[s] into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use." *Id.*

---

[5] The statutory requirement is universally recognized as "jurisdictional." Different nouns are used to describe it. *See Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338 (2d Cir. 2007) (referring to the requirements of 42 U.S.C. § 2000cc(a)(2) as RLUIPA's "jurisdictional element"); *Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*, 980 F.3d 821 (11th Cir. 2020) ("jurisdictional hook"); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004) ("jurisdictional nexus"); and Tyson Tamashiro, *RLUIPA and the Individualized Assessment: Special Use Permits and Variances Under Strict Congressional Scrutiny*, 31 U. Haw. L. Rev. 257 (2008) ("jurisdictional trigger").

Likewise, the Ninth Circuit applied RLUIPA's jurisdictional prerequisite in *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d at 1055 (concluding that RLUIPA applied because "[t]he City's treatment of the Church's [CUP and rezoning] applications constitute[d] an 'individualized assessment'" under 42 U.S.C. § 2000cc(a)(2)(C)); *Temple of 1001 Buddhas v. City of Fremont*, 588 F.Supp.3d 1010, 1027 (N.D. Cal. 2022) (noting that RLUIPA applies when the government "take[s] into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use.").

Because the Church has refused to apply for a CUP, the City has never made the required individualized assessment. Unless and until the Church can present a ripe claim, the Court lacks jurisdiction and must dismiss.

**III. The § 1983 Claim (Count 3) Must be Dismissed.**

   **A. Standard for Municipal Liability under *Monell***

While the Amended Complaint abandoned the original Complaint's claims against City officials, it still seeks relief against the City under 42 U.S.C. § 1983. Municipalities cannot be liable under § 1983 on the basis of respondeat superior. *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1167 (9th Cir. 2022). To the contrary, a municipality can be liable under § 1983 if, and only if, a constitutional violation was caused by "a deliberate policy, custom, or practice" of the municipality itself.

In addition, a viable claim under § 1983 must "demonstrate that the policy or custom of a municipality 'reflects deliberate indifference to the constitutional rights of its inhabitants.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). The deliberate indifference standard is an objective inquiry. *Castro v. Cnty. of Los Angeles*, 833 F.3d at 1076 (overruling *Gibson v. Cnty. of Washoe*, 290 F.3d 1175 (9th Cir. 2002)).

These requirements cannot be satisfied through conclusory allegations. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (existence of municipal policy under § 1983 is measured by the plausibility requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Thus, the only factual allegations that can be credited are those that "plausibly suggest an entitlement to relief." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d at 637.

The Complaint clearly fails these requirements. It makes no allegation of deliberate indifference. It contains no allegation of any prior incident within the City that could plausibly give rise to a "custom," no allegation that the City failed to train its code enforcement officers, and no allegation that the City is guilty of any other culpable omission.

Rather, the § 1983 claim points exclusively at two "policies"—that a CUP is required to operate a food ministry in a residential district, and that semi-trucks are not permitted in residential areas. (Amended Complaint ¶ 145). These allegations fail for two reasons: ripeness and a lack of plausibility.

**B. The § 1983 Claim is Unripe under *Guatay Christian Fellowship***

Along with the RLUIPA claims, the § 1983 claim is unripe due to the Church's failure to seek a CUP. In *Guatay,* the Court noted that "all of the circuits to address this issue have applied the final decision requirement to RLUIPA claims, *as well as to related First Amendment-based § 1983 claims*." *Guatay Christian Fellowship*, 670 F.3d at 979 (emphasis added). Subsequent case authority has thus dismissed § 1983 claims as unripe. *E.g.*, *Henry v. City of Somerton*, CV-18-03058-PHX-DJH, 2021 WL 2514686 (D. Ariz. June 17, 2021) (dismissing RLUIPA-related § 1983 claim as unripe based upon *Guatay* and similar cases). Because the Church has not applied for a CUP, its § 1983 claims must also be dismissed.

## C. There is no Plausible Claim that a Municipality Violates § 1983 by Enacting Zoning and Traffic Ordinances

The § 1983 claim does not allege a plausible violation of the First Amendment because governing First Amendment precedent says just the opposite. A "generally applicable" zoning law is valid under the First Amendment even if it "incidentally burdens the free exercise of religion." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1031 (9th Cir. 2004). Local zoning might contravene the First Amendment only if it was enacted for the purpose of targeting religious exercise, or if it is not rationally related to a legitimate governmental interest. *Id.* The amended Complaint alleges no such thing. Moreover, part of what led to the enactment of RLUIPA was a view that First Amendment doctrine was too "generous" to local zoning authorities.

Moreover, Ninth Circuit authority holds that municipalities may require religious uses to obtain a CUP. *Christian Gospel Church v. City and County of San Francisco*, 97 F.2d 1221 (9th Cir. 1990) (holding that CUP requirement did not contravene the First Amendment). The City's CUP requirement is thus solidly grounded in First Amendment doctrine. No legal authority holds that traffic laws run afoul of the First Amendment.

As noted, the Complaint fails to allege the essential element of deliberate indifference to First Amendment rights. Even if this omission is excused, any allegation of deliberate indifference would be wholly implausible. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Park v. City and County of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (citing *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997)). Simply put, a municipality runs the risk of liability under § 1983 only when it ***knows*** that its codes and ordinances run afoul of the First Amendment.

The real world is otherwise. Many cities require CUPs, and every city has traffic laws. Common sense renders implausible any claim that a city consciously placed itself on

the "wrong side of the law" by enacting a traffic code and a zoning ordinance. These actions do not, in and of themselves, reflect deliberate indifference to First Amendment rights. This Court should follow the lead set in *Temple of 1001 Buddhas v. City of Fremont*, 562 F.Supp.3d at 425-426 (dismissing § 1983 claim against municipality because its adoption of municipal zoning ordinance did not reflect deliberate indifference to First Amendment rights).

**IV.    The State Law Claims (Counts 4 and 5) Should be Dismissed.**

The Amended Complaint concludes with two claims under A.R.S. § 41-1493.03, the zoning component of Arizona's Free Exercise of Religion Act ("FERA"). For the following reasons, the Court should dismiss these claims without prejudice under 28 U.S.C. § 1367(c).

In 2010, the Arizona Legislature enacted A.R.S. § 41-1493.03 as House Bill 2586. The legislative history shows that the intention was merely to duplicate RLUIPA under Arizona law.[6] But while RLUIPA has been interpreted in many precedents, there is literally no Arizona precedent interpreting any aspect of A.R.S. § 41-1493.03. The Arizona statute thus raises many novel questions, *e.g.*, what categories of defendants may be sued, what standards of analysis should be applied, and what type of relief is available.

Dismissal of the state law claims is warranted under all four subsections of 28 U.S.C. § 1367(c).

First, dismissal of the federal claims creates the circumstance specified in § 1367(c)(3), *i.e.*, dismissal of state law claims after the court "has dismissed" all federal claims. This alone justifies dismissal of the state law claims without prejudice. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (affirming dismissal of remaining

---

[6] Bill Status Inquiry (azleg.gov) Arizona courts routinely rely upon such "fact sheets" as legislative intent. *E.g.*, *Marianne N. v. Dep't of Child Safety*, 243 Ariz. 53, 58 ¶ 23 (2017).

state law claims under § 1367(c)(3) after adjudication of all federal claims).

Section 1367(c)(2) also points to dismissal through an equivalent formulation. That is, after all federal claims have been dismissed, it necessarily follows that the state law claims "substantially predominate[]" over the federal claims.

The other two subsections of § 1367(c) underscore that dismissal is appropriate. Previous decisions have characterized claims under A.R.S. § 41-1493.03 as "novel" within the meaning of § 1367(c)(1). *Divine Grace Yoga Ashram Inc. v. Cnty. of Yavapai,* CV-21-08221-PCT-DJH, 2022 WL 279577, at *2 (D. Ariz. 2022) (calling this "a novel and complex area of Arizona law" because the statutes "sorely lack interpretation and application from Arizona courts."); *Henry v. City of Somerton*, CV-18-03058-PHX-DJH, 2021 WL 8263473, at *4 (D. Ariz. 2021) (declining to exercise supplemental jurisdiction over claim under A.R.S. § 41-1493.03 because it was "in the interest of the development of Arizona law that the Court [refrain from doing so].")

Finally, there is an "exceptional circumstance" within the meaning of § 1367(c)(4). Arizona courts would decline to hear these claims under the same ripeness rule that applies under *Guatay*. *See Aegis of Arizona, LLC v. Town of Marana*, 206 Ariz. 557 ¶¶ 40-41 (App. 2003) (applying *Williamson County* ripeness rule). This Court should not be more eager to decide questions of state law than Arizona courts would be. Rather, this Court should either hear state law claims as state courts would or, if there is to be any difference, it should be more cautious about addressing questions of state law.

## V. Conclusion

Therefore, Defendant respectfully requests that the Church's Amended Complaint be dismissed for lack of subject matter jurisdiction and failure to state a claim.

///

///

///

DATED this 18th day of June 2024.

**GAMMAGE & BURNHAM, P.L.C.**

By: */s/ Cameron C. Artigue*
    Cameron C. Artigue
    40 North Central Avenue, 20th Floor
    Phoenix, AZ 85004
    *Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2024, I electronically filed the foregoing with the Clerk of the U.S. District Court using the CM/ECF system which will send notification of such filing to the CM/ECF registrants, including:

Ryan J. Regula
Charlene A. Warner
SNELL AND WILMER
One East Washington Street, Suite 2700
Phoenix, AZ 85004-2556
rregula@swlaw.com
cwarner@swlaw.com

David J. Hacker (*pro hac vice forthcoming*)
Jeremiah G. Dys (*pro hac vice forthcoming*)
FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway, Suite 1600
Plano, Texas 75075
dhacker@firstliberty.org
jdys@firstliberty.org

Camille P. Varone (*pro hac vice forthcoming*)
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Avenue, N.W., Suite 410
Washington, D.C. 20004
cvarone@firstliberty.org

Steven D. Keist (#11251)
KEIST THURSTON O'BRIEN
10150 W. Desert River Blvd.
Glendale, Arizona 85037
Telephone: (623) 937-8888
steve@ktolawfirm.com

*Attorneys for Plaintiff*

*/s/ Elvin Valentin, Jr.*