Ryan J. Regula (#028037)
Charlene A. Warner (#037169)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
rregula@swlaw.com
cwarner@swlaw.com

David J. Hacker (TX #24103323, *pro hac vice*)
Jeremiah G. Dys (TX #24096415, *pro hac vice*)
FIRST LIBERTY INSTITUTE
2001 W. Plano Parkway, Suite 1600
Plano, Texas 75075
Telephone: 972.941.4444
dhacker@firstliberty.org
jdys@firstliberty.org

Camille P. Varone (DC #161724, *pro hac vice*)
FIRST LIBERTY INSTITUTE
1331 Pennsylvania Avenue, N.W., Suite 1410
Washington, D.C. 20004
Telephone: 202.921.4105
cvarone@firstliberty.org

Steven D. Keist (#11251)
KEIST THURSTON PC
10150 W. Desert River Blvd.
Glendale, Arizona 85037
Telephone: (623) 937-8888
steve@ktolawfirm.com

*Attorneys for Plaintiff Gethsemani Baptist Church*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gethsemani Baptist Church, an Arizona nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>City of San Luis, a political subdivision of the State of Arizona,<br><br>Defendant. | No. 2:24-cv-00534-GMS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |

## INTRODUCTION

By the present motion to dismiss, the City of San Luis seeks to insulate from judicial review its forced closure of a long-established and long-approved Food Ministry that Gethsemani Baptist Church (the "Church") ran as an exercise of its Christian faith. The Church operated its Food Ministry for nearly a quarter century without issue. After all, when the City passed its new zoning code in 2012, it approved the ministry as a legal non-conforming use. But since last year, the City turned hostile, now claiming that the Food Ministry is, in fact, illegal. And although the City references a conditional use permit ("CUP") process, it has made clear through an escalating series of letters that its position is final. The City has further doubled down on that final position, even citing the Church's pastor for sharing food with a few hungry people.

To make matters worse, and indeed irreparable, the City now seeks to avoid this Court's review. The City, however, misstates the law and misunderstands the Church's allegations—particularly the adequacy and ripeness of each claim. Because nothing under current law inhibits this Courts' ability to review the City's violation of the Church's religious freedom, and because the Church has adequately pled each of its claims, this Court should deny the Motion to Dismiss [Doc. 35 ("MTD")] and hear the case on the merits.

## LEGAL STANDARD

Although the legal standard applicable to the City's Motion is an important question, the City did not brief the issue. [MTD 6–7.] Presumably, because the City argues that ripeness and finality issues are jurisdictional [*id.* at 7–8], the City would posit that Rule 12(b)(1)'s standard should apply, while Rule 12(b)(6)'s legal standard would apply to the sufficiency of the claims as pleaded. However, because the ripeness arguments raised by the City are *prudential*, rather than Article III jurisdictional requirements, Rule 12(b)(6)'s standard should apply to the City's Motion in full.

The City relies primarily on two cases in arguing that ripeness poses a jurisdictional hurdle: *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957 (9th Cir. 2011), and the case it in turn relies on, *Williamson County Regional Planning Commission v.*

*Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), *overturned in part by Knick v. Twp. of Scott*, 588 U.S. 180 (2019). *Williamson County* established a rule requiring both exhaustion and finality for land use and takings claims to ripen. Subsequently, *Guatay* treated ripeness as drawing on both "Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." 670 F.3d at 980.

However, this approach holds significant tension with the Supreme Court's recent decisions. As the Supreme Court recently explained, it does not consider *Williamson County* ripeness to be a matter of Article III jurisdiction, but rather a prudential question. *See Knick*, 588 U.S. at 304 (explaining the Court "recast [*Williamson County*'s holding] as a 'prudential' ripeness rule"); *Horne v. Dep't of Agric.*, 569 U.S. 513, 526 (2013) (land use ripeness question involves "prudential ripeness" and "is not, strictly speaking, jurisdictional" because a "'Case' or 'Controversy' exists once the government" makes its decision regarding the land). While the Ninth Circuit has not yet considered whether, after *Knick*, *Williamson County's* ripeness rule is prudential, sister circuits have followed the Supreme Court's lead and held that "*Williamson County*'s ripeness test is prudential, not jurisdictional." *North Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021).

In cases like this, "[p]rudential ripeness is properly analyzed under Rule 12(b)(6) rather than Rule 12(b)(1) because it does not implicate subject matter jurisdiction." *Id.* at 1230; *see also Sherman v. Town of Chester*, 752 F.3d 554, 560–61 (2d Cir. 2012) (analyzing *Williamson County* ripeness under Rule 12(b)(6); *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012) (same). The Church respectfully urges this Court to apply the Rule 12(b)(6) standard for the same reasons these other circuits have. Under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *McKee v. Peoria Unified Sch. Dist.*, 963 F. Supp. 2d 911, 924 (D. Ariz. 2013). To survive dismissal, a complaint "must contain factual allegations sufficient to 'raise a right to relief above the speculative level.'" *McKee v. Peoria Unified Sch. Dist.*, 963 F. Supp. 2d 911, 924 (D. Ariz. 2013) (quotation omitted).

# ARGUMENT

**I.     Gethsemani's RLUIPA Claims Are Ripe and Appropriate for Judicial Review.**

While the City raises the same ripeness arguments against both the Church's RLUIPA Substantial Burden (Count I) and Equal Terms (Count II) claims, different rules apply. Count II does not raise allegations regarding the City's classification and treatment of the Food Ministry as a whole. Rather, it challenges the unequal application of City policy regulating the Church's residential property use to the detriment of a specific aspect of its Food Ministry. [First Am. Compl. ("FAC") ¶ 134–35.] "Because the alleged injury under RLUIPA's equal terms provision may be present upon a facial reading of the [policy], it would not matter whether [the Church] applied for the CUP" for this Count. *Divine Grace Yoga Ashram Inc. v. Cnty. of Yavapai*, No. CV-21-08221-PCT-DJH, 2022 WL 279577, at *4 (Jan. 31, 2022). Count II is facially ripe for consideration.

Notwithstanding this distinction, the Church's other RLUIPA claim (Count I) is ripe, and no barriers exist to this Court's review. Originally under *Williamson County*, for a land use or takings claim to ripen, a claimant must exhaust its remedies and the government must have made a final decision regarding the property at issue. *Williamson County*, 588 U.S. at 186–95. However, the Supreme Court recently overturned *Williamson County*'s exhaustion requirement as "not just wrong" but "exceptionally ill founded" and in conflict "with much of our [] jurisprudence." *Knick*, 588 U.S. at 203. In other words, a landowner does *not* need to administratively exhaust remedies before turning to a federal court for relief. *See id.* at 194–95. So, all that remains is *Williamson County*'s finality requirement.

Finality and exhaustion bear important distinctions: the "question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable." *Williamson County*, 473 U.S. at 192. Finality ensures that "the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury," whereas exhaustion considers whether the plaintiff complied with "administrative and judicial procedures" for seeking relief. *Id.* at 193. The finality requirement "is relatively modest"

and requires "nothing more than *de facto* finality," *Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474, 478–79 (2021) (per curiam)—meaning either "the permissible uses of the property are known to a reasonable degree of certainty" or that "the agency lacks the discretion to permit" the use at issue. *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001). Finality does not require landowners to exhaust administrative procedures or to "submit applications for their own sake." *Id.* at 622. Rather, a "final decision" exists and becomes prudentially ripe for judicial resolution "[o]nce the government is committed to a position." *Pakdel*, 594 U.S. at 479.

As pleaded, applying *Williamson County*'s finality requirement is straightforward. The City sent a Notice of Zoning Violation and other correspondence to the Church stating that the Food Ministry violated the City's zoning code. [FAC ¶ 58; Ex. C.] Specifically, the City deemed the Food Ministry to no longer be a legal non-conforming use because the "distribution, storage, and traffic generated by the food distribution activity clearly alter the nature and character of the non-conforming use" [*id.* ¶ 59], which the City considered to be at "commercial level" [*id.* ¶ 60.] As a result, the City demanded the Church cease its Food Ministry [*id.*], has not changed its position after nearly a year of exchanged letters and litigation,[1] and even cited the Church's pastor for distributing food on Church property. [*Id.* ¶¶ 77–82, 95.] This is a definitive decision. This case poses no danger that the Court need speculate how the City would apply the City Code here. The City's decision is final, no application for a CUP would change it, and the Church's suit is ripe. This should be enough

---

[1] The City "notes" but does not "raise" two merit arguments, which is improper at this procedural posture and should be stricken from consideration. [MTD 5–6.] Nevertheless, it is worth noting that the Church's allegation that its Food Ministry is charitable, not commercial, affects both ripeness (whether a CUP is required at all) and the sufficiency of its claims. [MTD 5–6.] The Food Ministry's reliance on voluntary alms and charitable donations does not convert it to a commercial enterprise. *Compare* FAC ¶¶ 25–30 *with Hernandez v. C.I.R.*, 490 U.S. 680, 691–92 (1980) (requesting sizable payments on a "fixed price schedule" in exchange for "identifiable benefits" was a "quintessential *quid pro quo* exchange"). Consider *Micah's Way*, where the City argued the ministry's "administrative activities," like helping complete governmental forms, were commercial, and thus any food distribution was incidental and not protected under RLUIPA. *See Micah's Way v. City of Santa Ana*, 8:23-cv-00183-DOC-KES, 2023 WL 4680804, at *4 (C.D. Cal. June 8, 2023). That argument failed because Micah's Way was a "'*non-profit* faith-based organization,' and so its activities [were] not 'commercial,' regardless of whether they [could] be described as 'administrative.'" *Id.* So too here.

- 4 -

to end the inquiry and permit the Court to consider the sufficiency of the Church's claims.

However, the City argues that Gethsemani's claim is not ripe because it has not applied for a CUP and the City has not conducted an individualized assessment under RLUIPA. In doing so, City relies extensively on *Guatay*, which it interprets as creating a hard-and-fast rule that a plaintiff must submit at least one CUP application before an RLUIPA claim can ripen. [MTD 6–7.] This reading of *Guatay* attempts to create an impermissible exhaustion requirement in violation of *Knick*. But, to the extent that *Guatay* applies and governs here (which the Church disputes), a sufficiently final and individualized decision has occurred here, and the case is ripe for consideration.

### i. *The City Overextends* Guatay *to Create an Exhaustion Requirement.*

The City's reading significantly overextends *Guatay*'s holding and is at odds with how other courts have applied this precedent. In *Guatay*, the Ninth Circuit noted that the church at issue had "not alleged a colorable argument of immediate injury," applied for a CUP, or credibly alleged that applying for a CUP would be futile. *Guatay*, 670 F.3d at 979–80. Under those circumstances, the church's claim was not ripe because Ninth Circuit required a *final* decision under *Williamson County*. *Id.*

Nevertheless, the City argues that the Church must first go through the very process it challenges in this action and receive a final decision on such an application in order for the claim to ripen. This argument is a Trojan horse for reintroducing an exhaustion requirement that, however labeled, enjoys no support. *See Guatay*, 670 F.3d at 977 n.15 ("[W]e extend only the final decision requirement to RLUIPA claims; the exhaustion requirement . . . was specific to the takings context."); *Knick*, 588 U.S. at 203 (requiring exhaustion for ripeness is "not just wrong" but "exceptionally ill founded").

The City's arguments mirror the Ninth Circuit's recent attempt to resurrect exhaustion under *Williamson County*. There, the Ninth Circuit would have found a claim unripe because, "earlier during the administrative process, Plaintiffs failed to pursue possible administrative measures." *Pakdel v. City & Cnty. of San Francisco*, 977 F.3d 929, 932 (9th Cir. 2020) (Bea, J., dissenting from denial of rehearing en banc). However, the

Supreme Court vacated the Ninth Circuit's decision, explaining that requiring a plaintiff to first seek an exemption through state procedures "plainly requires exhaustion," and that the City's decision was sufficiently "final" such that the suit could proceed without first completing the City's administrative procedures. *See Pakdel*, 594 U.S. at 479–81.

While the Ninth Circuit has not yet applied *Knick* and *Pakdel* in an RLUIPA-context, other circuits have rejected the City's position. The Sixth Circuit, for instance, expressly held that a church does *not* need to go through a city's zoning procedures before its RLUIPA claim ripens. *Cath. Healthcare Int'l, Inc. v. Genoa Charter Twp.*, 82 F.4th 442, 448 (6th Cir. 2023). Instead, "[i]n land-use cases, the necessary event is simply that the government has adopted a 'definitive position' as to 'how the regulations at issue apply to the particular land in question.'" *Id.* And that requirement was "manifestly" satisfied where the Township had insisted that the church obtain a special use permit, like the City seeks to do here. *Id.*

The Sixth Circuit also deemed the City's position that a plaintiff must first seek a CUP "plainly mistaken" because it "conflate[d] ripeness (sometimes called 'finality' in this context) and exhaustion." *Id.* Unlike exhaustion, ripeness "requires only a 'relatively modest' showing that the government is committed to a position' as to the strictures its zoning ordinance imposes on a plaintiff's proposed land use." *Id.* (quoting *Pakdel*, 594 U.S. at 478–79). This reasoning is consistent with *Guatay*, which required an adequate showing of finality but *not* exhaustion. *Guatay*, 670 F.3d at 978 n.16 (explaining it did not extend *Williamson County*'s exhaustion requirement to the RLUIPA context). This Court may follow the Sixth Circuit's lead as persuasive authority.

Further, this case is sufficiently distinguishable from *Guatay* that its holdings bear little weight here. In *Guatay*, the property was always located in a zoning district requiring a use permit for religious gatherings, but was never used as a church until 1986. 670 F.3d at 961–62. Although the church attempted to apply for use permits in the next few years, it never completed those processes. *Id.* at 962–63. Years later, the County issued notices of violation, and rather than complete the permit process, the church sued. *Id.* at 965. In other words, for the duration of the Church's occupancy of the land, it *knew* it was subject to a

use permit requirement but did not finish the process of seeking one.

Not so here. In this case, the Church and its ministry predated the current zoning code. After the code's implementation in 2012—13 years after the Church's founding—the City treated the Church as a legal non-conforming use and, over many years, openly supported its Food Ministry, including through grants. [FAC ¶¶ 42–25, 58–59.] Then, under a new administration, the City pretextually decided that the Food Ministry was not a legal non-conforming use, and that, for the first time in the Church's existence, must obtain a CUP or else cease all food distribution. [*Id.* ¶¶ 59–60.] It further prohibited the Church from meaningfully utilizing its land to support its ministry, notwithstanding any CUP requirement. [*Id.* ¶¶ 51–52.] Following these events, the Church turned to this Court to challenge whether it is subject to a CUP requirement *at all*, in addition to whether the City's underlying actions constitute an RLUIPA violation. Unlike in *Guatay*, the Church does not concede that it needs a CUP.

The City's overextended reading of *Guatay* gives municipalities significant power over religious institutions, in which a city can impose new zoning rules on a church, and then keep it out of court until the church not only complies with the very procedural hurdles to which it objects but exhausts them. This interpretation defies the body of law on ripeness.

### ii. The City Has Made an Individualized Assessment Under RLUIPA.

The City raises a second argument against ripeness, positing that because the Church has not applied for a CUP, the City has not made an "individualized assessment" triggering the applicability of RLUIPA. [MTD 7.] This argument is similarly unavailing. Specifically, RLUIPA's substantial burden rule applies in circumstances where "the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, *or has in place formal or informal procedures or practices that permit the government to make*, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C) (emphasis added). In the City's view, only a CUP application can constitute the necessary assessment.

However, other courts in this circuit have rejected the City's exact argument that a

- 7 -

church must apply for a CUP before its RLUIPA claim ripens. In *St. Timothy's Episcopal Church v. City of Brookings*, 1:22-cv-00156-CL, 2024 WL 13013123 (D. Ore. Mar. 27, 2024)—another food ministry case—the City argued the "Plaintiff cannot bring this claim because they have not submitted an application for a [CUP] under the Ordinance, and therefore the City has not conducted an individualized assessment in this specific case." *Id.* at *6. The court disagreed, holding "[n]othing in RLUIPA requires that the individualized assessment *actually take place* in order for RLUIPA to apply." *Id.* (emphasis added). There, it was "sufficient that the Ordinance 'permits' the City to conduct an individualized assessment in the process of evaluating any permit application." *Id.* But, for the avoidance of doubt, the court pointed out that the City *did* conduct an individualized assessment when it issued the church a "notice of abatement" finding that the Church was operating its food ministry without a CUP in violation of the City's local ordinances. *Id.* at *7. The court reasoned that the notice of abatement took "into account [the church's] particular activities and use of the land to determine compliance with the code." *Id.*

*St. Timothy's* directly closes the door on the City's ripeness arguments under RLUIPA, but the City simply ignored the case. Like in *St. Timothy's*, the City has conducted an assessment of the Church's Food Ministry. *See id.* at *7. In its letters to the Church, the City ordered the Church to cease distributing food without a CUP and deemed it supposedly in violation of various city code provisions. [*See* Exs. F, H.] In its evaluation, the City considered the Church's particular activities and use of its own land to convey its position. And even if this were not enough, the City also conducted an individualized assessment when it began issuing citations against the Church's pastor for utilizing its land to operate the Food Ministry at the beginning of 2024. Accordingly, the Church has sufficiently pled this aspect of its RLUIPA claims.

### iii. The Church Sufficiently Alleged that Applying for a CUP Would Be Futile.

Notwithstanding the above, the City further contests the Church's allegations that even if it was otherwise required to submit a CUP application, that effort would be futile. [MTD 9.] Notably, futility is an exception to *Williamson County*'s finality requirement.

- 8 -

*See Guatay*, 670 F.3d at 981 ("Under the final decision requirement, 'futility' refers to conditions that make the process itself impossible or highly unlikely to yield governmental approval of the land use that claimants seek—such as government obstinacy . . . .").

As pleaded, this is a case where the process is "highly unlikely to yield" approval because of "government obstinacy." The City decided that the Food Ministry is no longer a legal non-conforming use and limited its property use under the same law and facts that the City Council would consider for a CUP. [*See* FAC ¶¶ 58–60.] And despite the Church's attempt to plead otherwise with the City Council and City Zoning Office, the City has doubled down on its position that the Church may not operate without a CUP or use its property to operate fundamental aspects of the food ministry in a series of letters stating its view of the law and the facts on the ground. [*Id.* ¶¶ 63, 66–67, 73–74.] The City has also revoked the Church's access to use City assets [*id.* ¶ 47–49], expounded on its alleged "health and safety" concerns and other purported "adverse" impacts from the Food Ministry's operation in the residential zone [*id.* Ex. A, C–D, F, H], cited the Church's pastor for food distribution activities [*id.* ¶¶ 77–81], and said that the Food Ministry would be shut down completely [*id.* ¶ 82]. After months of hostility from the City, the Church does not—and cannot reasonably—expect that further administrative review by the same decisionmakers would yield a new result, either with respect to the CUP requirement in the first instance or the City's inevitable denial.

The City may point to language from *Guatay* to impose "at least one meaningful application" before a party can invoke the futility exception. 670 F.3d at 982. To the extent the Court applies *Guatay*, the Church has meaningfully applied for relief when it asked the City to reconsider its decision that the Church cannot operate as it had for decades [*id.* ¶¶ 61, 65, 72 & Exs. E, G]—which are among the primary issues raised in this case. Unlike *Guatay*, which involved a hypothetical question of the outcome of a CUP process, this case initially challenges *whether* the CUP process applies—an issue on which the City has taken a final position, and which would be futile (indeed, impossible) to further appeal.

Moreover, to the extent *Guatay* imposes a hard-and-fast CUP application (which the

Church contests), the Court may consider whether *Guatay* still controls regarding futility. Again, while the Ninth Circuit has not had occasion to revisit *Guatay* after *Knick* and *Pakdel*, those Supreme Court decisions effectively abrogated *Guatay*'s analogous rule. The City's proffered "approach—that a conclusive decision is not 'final' unless the plaintiff also complied with administrative processes in obtaining that decision—is inconsistent with the ordinary operation of civil-rights suits." *Pakdel*, 594 U.S. at 479. And a demand to first seek an exemption through prescribed state procedures "plainly requires exhaustion." *Id.* Just as the City should not be able to insert an exhaustion requirement under outdated case law, it should not be able to do so through a backdoor regarding futility.

Finally, the City asks this Court to look outside the four corners of the Amended Complaint by attaching a declaration, although it does not discuss its applicability. The declaration makes factual assertions about the number of CUP applications the City has reviewed and approved and the procedural steps that apply. Because the Church cannot refute the declaration's assertions without discovery, under the Rule 12(b)(6) standard, a declaration is not an acceptable method to contest factual allegations. The Court should strike the declaration and resolve the Motion only on the Amended Complaint's allegations.

### iv.     *The Church Sufficiently Pleaded a Case or Controversy under Article III.*

Finally, to the extent this Court considers ripeness to include an Article III element, the Church has more than shown an injury to its ministry efforts caused by the City's pretextual, unequal, and improper enforcement of City ordinances against the Church. In brief, although the Food Ministry had been treated as a legal nonconforming use since 2012, the City changed its mind and prohibited it from operating as it did in the past. The City's recent attempt to re-classify the Church as "commercial" to trigger the CUP requirement and its categorical prohibition of certain fundamental aspects of the Church's ministry are improper, and themselves constitute an RLUIPA violation. *See Cath. Healthcare*, 82 F.4th at 450 ("the Township substantially burdened their religious exercise when it required them to obtain a special land-use permit" to engage in activities on the land at issue).

Indeed, submitting to the City's CUP requirement when the Church contests it need

not do so in the first instance imposes delay, uncertainty, and expense, which demonstrates a present injury. *See also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012) (inability of church to use its property as intended as a factor in an ordinary Article III ripeness inquiry). The Church cannot acquiesce to the City's CUP requirement without partially conceding the substance of its RLUIPA claims. Additionally, under its position, the City has personally penalized Pastor Castro for conducting the Food Ministry at the Church, and the City continues to (incorrectly) enforce its zoning code. The circumstances here are sufficiently final and adverse to satisfy Article III.

## II. The Church Sufficiently States its Causes of Action Under RLUIPA.

Despite characterizing its Motion to Dismiss as one under Rule 12(b)(6), the City raised no argument that the Church failed to state a claim under RLUIPA. If the City had such arguments, it should have raised them in this Motion. To the extent that the City raises substantive arguments for the first time in its reply, this "Court has no obligation to consider arguments raised for the first time in a reply brief." *SPUS8 Dakota LP v. KNR Contractors LLC*, 641 F. Supp. 3d 682, 691 (D. Ariz. 2022) (citation omitted).

But even if the Court finds these de minimis pleadings sufficient to raise a Rule 12(b)(6) argument, the Amended Complaint sufficiently pleads both its RLUIPA substantial burden and equal terms claims. The Church alleged that, by deeming the Food Ministry commercial and prohibiting it from operating, the City misapplied its zoning code to impose a substantial burden on the Church's sincere religious exercise. [FAC ¶¶ 107–29.] Likewise, the Church alleged that the City imposed its zoning policies unequally against the Church's use of its property, while turning a blind eye to similarly situated secular entities in the same zoning district. [*Id.* ¶ 130–37.] The Church alleged every component of both RLUIPA violations, and the City does not argue otherwise.

## III. The Church Sufficiently Alleges an As-Applied Free Exercise Clause Violation.

The City[2] next argues that the Church's Free Exercise claim should be dismissed

---

[2] The Church agreed to dismiss the City officials from the original Complaint as part of an agreement between the Parties to allow the Church to resume its Food Ministry in a limited,

- 11 -

because it did not apply for a CUP and because the Church did not plead "deliberate indifference" to its constitutional rights or a policy or custom, or allegations that "plausibly" demonstrate a constitutional violation. [MTD 11–12.] These arguments lack merit.

As explained above, land-use plaintiffs are not required to administratively exhaust all remedies in order to bring a claim; rather, plaintiffs must only demonstrate finality. *See supra* at 3–4. Moreover, the City overstates the importance of *Guatay* to Count III. Contrary to the City's representation, the Ninth Circuit declined to decide "whether *Williamson County*'s final decision requirement should apply to First Amendment claims in the land use context." *Guatay*, 670 F.3d at 987. The City's other case, *Henry v. City of Somerton*, acknowledged that this remains an open question and heavily based its holding on mootness issues that are irrelevant to the instant matter (namely the City changed its ordinances, and thus church was no longer subject to a CUP requirement). No. CV-18-03058, 2021 WL 2514686, at *5–6 (D. Ariz. June 17, 2021).

The City's other arguments are similarly unpersuasive. The Church adequately alleges the existence of a relevant policy that was applied with deliberate indifference and violated the Church's First Amendment rights. The Amended Complaint alleges: "It is the City's policy and practice that charitable food distribution is a commercial enterprise and thus a church may not operate a legal nonconforming food ministry in a residential district without a CUP. It is also the City's policy that semi-trucks are not permitted in residential areas." [FAC ¶ 145.] The City seeks to add requirements that the law does not impose, asking for the Church to allege not only a policy that was applied here, but also a long-standing custom or failure to train. [MTD 11–12.] This misstates *Monell*'s holding, which requires an allegation of either a "policy *or* custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (emphasis added). Indeed, "a single decision may satisfy *Monell*'s municipal policy requirement if that decision was properly made by one of the municipality's authorized decision makers, *i.e.*, by an official who possesses final authority

---

highly diminished way. [Doc. 31.] As stated in the Joint Status Report, the Church does not concede that any of the amended allegations failed to state a claim but agreed to do so in hopes of resolving this litigation as expeditiously as possible. [*Id.* at 4.]

to establish a municipal policy with respect to the challenged action." *Shelley v. Cnty. of San Joaquin*, 996 F. Supp. 2d 921, 932 (E.D. Cal. 2014) (quotations omitted); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986) ("If the . . . action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."). As the challenged actions were taken by authorized decisionmakers—notably, the mayor, City Manager, and Code Enforcer—the Church has adequately pled this element.

The City demurs again, arguing the Church did not plead deliberate indifference. But this ignores the allegations and does not take them in the light most favorable to the Church, as the Court must do at this stage. The 1983 claim can go forward under different approaches: (1) the City's policy—pretextually characterizing the Food Ministry as a commercial enterprise that may not currently operate as a legal non-conforming use on its property—is itself unlawful, or (2) while the City's official policies—that commercial enterprises must seek a CUP and associated laws regulating property use—may not be facially unconstitutional, those policies are unconstitutional as applied to the Church. Under either approach, the Church has met its pleading obligations.

Under the first approach, the Church need not plead deliberate indifference to state a claim under Section 1983. "Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward. 'Section 1983 itself contains no state-of-mind requirement independent of that necessary to state a violation of the underlying federal right.'" *Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404–05 (1997) (quoting *Daniels v. Williams*, 474 U.S. 327, 330 (1986)). "[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself

violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Id.* That is precisely the allegation here: that the City's new policy that the Food Ministry cannot continue its current operations itself violates federal law. [FAC ¶ 59.]

Under the second approach, where deliberate indifference is an element of a 1983 action, the Church has also met its pleading obligations. The Ninth Circuit applies a "deliberate indifference" requirement in order to find liability in "single incident cases," such as where a municipal employee applies a facially permissible policy in an unconstitutional manner." *Doe v. City of San Diego*, 35 F. Supp. 3d 1233, 1238 (S.D. Cal. 2014). "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

Here, the Church clearly pleads that the City was on notice about its constitutional rights and has refused to back down. As the Amended Complaint points out, because the Church raised its legal arguments multiple times, the City was on notice of its obligations to respect the Church's Free Exercise rights but has refused to do so. [FAC ¶¶ 65, 70–72 & Exs. E, G.] The Amended Complaint thus pleads that the City acted with deliberate indifference to its obligations to the Church under the First Amendment and RLUIPA by misapplying City Code and improperly deeming the Church's ministry to be commercial, thereby halting operations unless it applies for a CUP that will never be granted.

These allegations, under either theory of liability, plausibly state a claim that the City's policy and application thereof violated the Church's First Amendment rights and that the City adhered to the policy with deliberate indifference to the Church's rights. The City's arguments fundamentally misunderstand the claim. While the City defends its ability to impose generally applicable zoning and traffic laws and to require use permits, [MTD 13–14], that is not at issue. This is not a *respondeat superior* case, nor is it a facial challenge to the City's ordinances. Rather, the Amended Complaint brings an as-applied challenge based

on the City's improper application of its zoning ordinances and policies to the Church. In other words, the violation stems from the manner in which the City applied its ordinances, not the ordinances themselves. Because the City misunderstands that the Church's challenge is as-applied rather than facial, the Motion to Dismiss gives the allegations short shrift, simply saying they fail because of a "lack of plausibility." [MTD 12.]

With this issue corrected, the City raises no substantive argument that the Church's as-applied constitutional challenge fails to state a claim. Nor can it for the first time on reply. *See SPUS8 Dakota LP*, 641 F. Supp. 3d at 691. But even if the Court finds that these de minimis pleadings raised a Rule 12(b)(6) argument, the Motion should still be denied.

This case is a textbook example of what the Free Exercise Clause prohibits. The Free Exercise Clause provides that the "government may not constitutionally 'treat *any* comparable secular activity more favorably than religious exercise," *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. Educ.* ("*FCA*"), 82 F.4th 664, 686 (9th Cir. 2023) (en banc) (quoting *Tandon v. Newsom*, 593 U.S. 61, 62 (2021)), forbidding both "subtle departures from neutrality" and "covert suppression of religious beliefs." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). It also expressly protects against government actions that are coupled with "official expressions of hostility to religion," whether subtle or overt. *FCA*, 82 F.4th at 690 (quoting *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 584 U.S. 617, 639 (2018)). Any governmental act "burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny" in which the government must advance "interests of the highest order" that are "narrowly tailored" to those interests. *Lukumi*, 508 U.S. at 546.

Each of these violations is present here. Defendants have wielded the City Code in a discriminatory and pretextual manner to stop the Church from exercising its sincerely held religious beliefs—to feed the hungry and provide for the needy. [FAC ¶¶ 148–51.] Defendants' actions preventing the Church from carrying out its Food Ministry impose a burden on its religious exercise. The City accomplished this by misapplying the City Code, issuing letters and enforcement actions with escalating tone and consequences, removing

benefits that the Church previously enjoyed, and personally citing the Church's pastor. [*Id.* ¶¶ 152–54.] The Church has adequately pleaded its First Amendment claim.

### IV. The Church Raises Actionable Claims Under Arizona's Free Exercise of Religion Act.

The City concludes by asking the Court to dismiss the Church's claims under Arizona's Free Exercise of Religion Act ("FERA") without prejudice under 28 U.S.C. § 1367(c). [MTD 14.] The City's argument is essentially, because it believes the preceding claims are not ripe, all that remains are "novel questions" of Arizona law. *Id.* This argument misses the mark. As explained above, the Church's claims under the U.S. Constitution and federal law are ripe and ready for this Court's resolution. This is not a situation where the Court is asked to solely exercise supplemental jurisdiction over state law claims. 28 U.S.C. §§ 1367(c)(2) and (c)(3) are thus inapposite.

The City further hangs its hat on arguments under 28 U.S.C. §§ 1367(c)(1) and (c)(4)[3]—that is, that the Church's claims under FERA are too novel and complex for resolution in federal court. While it is true that few Arizona courts have yet to interpret FERA, the City overestimates the complexity of the issues presented by these claims.

Indeed, the plain text answers what standards FERA imposes on Arizona governmental bodies: they may not (1) "impose or implement a land use regulation in a manner that imposes an unreasonable burden on a person's exercise of religion, regardless of a compelling governmental interest" or (2) "impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution, regardless of a compelling governmental interest." This text is straightforward, and its meaning is plain on its face. To the extent the Court desires more interpretive guidance, it may look to cases interpreting the federal RLUIPA

---

[3] The City points to a 2003 Arizona case, *Aegis of Arizona, LLC v. Town of Marana*, 206 Ariz. 557 (App. 2003), as an example of Arizona state courts applying *Williamson County*'s "ripeness rule." [MTD 15.] This neglects that *Williamson County* was overturned in 2019, and that FERA was passed in 2010. *Aegis of Arizona* offers no guidance on ripeness under the current state of federal or Arizona law.

cases as persuasive authority. *See Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269, 298 ¶ 127 (2019) ("Because the text and requirements of FERA and RFRA are nearly identical, we rely on cases interpreting RFRA as persuasive authority in construing the requirements of FERA."). As the City points out, "[t]he legislative history shows that the [legislature's] intention was merely to duplicate RLUIPA under Arizona law." [MTD 14.]

The City additionally argues FERA raises novel questions about what categories of defendants may be sued and what standards of analysis should apply to FERA cases. But the plain text of the statute also answers those questions. The statute identifies that the "Government shall not impose" a land use requirement that violates its provisions. A.R.S. § 41-1493.03(A), (B). There is only one defendant in this case: the City government. Further, because the individual officials were voluntarily dismissed, no open question remains about whether they are appropriate defendants under FERA. And the cases the City cites, *Henry v. City of Somerton*, 2021 WL 8263473 (D. Ariz. Dec. 21, 2021), and *Divine Grace Yoga Ashram Inc. v. County of Yavapai*, 2022 WL 279577 (D. Ariz. Jan. 31, 2022), faced procedural questions that FERA does not specifically address, like whether damages could be sought for monetary losses, reputational losses, and emotional harm. *See Henry*, 2021 WL 8263473, at *3. But the Church has not sought those types of remedies here. And, unlike *Divine Grace*, there is no question about whether a jury is required in this case. The parties have agreed to a case management process that precludes that open question. These causes of action do not ask the Court to resolve novel or complex questions of Arizona law.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.

DATED this 25th day of July, 2024.

        SNELL & WILMER L.L.P.

By: */s/ Ryan J. Regula*
    Ryan J. Regula
    Charlene A. Warner
    One East Washington Street
    Suite 2700
    Phoenix, Arizona 85004-2556
    Telephone: 602.382.6000
    Facsimile: 602.382.6070

    David J. Hacker (*pro hac vice*)
    Jeremiah G. Dys (*pro hac vice*)
    FIRST LIBERTY INSTITUTE
    2001 W. Plano Parkway, Suite 1600
    Plano, Texas 75075
    Telephone: 972.941.4444
    dhacker@firstliberty.org
    jdys@firstliberty.org

    Camille P. Varone (*pro hac vice*)
    FIRST LIBERTY INSTITUTE
    1331 Pennsylvania Avenue, N.W.
    Suite 1410
    Washington, D.C. 20004
    Telephone: 202.921.4105
    cvarone@firstliberty.org

    Steven D. Keist (#11251)
    KEIST THURSTON PC
    10150 W. Desert River Blvd.
    Glendale, Arizona 85037
    Telephone: (623) 937-8888
    steve@ktolawfirm.com

    *Attorneys for Plaintiff Gethsemani Baptist Church*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of July 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF Registrants.

*s/ Hilda E. Echegaray*